UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DIANE ELAINE BENEFIELD, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 2:18-cv-389 JD |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Diana Benefield applied for social security disability benefits, alleging that she suffered from fibromyalgia and other conditions that left her unable to work. An ALJ found that Ms. Benefield had severe impairments, including carpal tunnel syndrome and headaches, but not fibromyalgia. He also found that despite her limitations, she could still do a range of light work, meaning she could perform her past work as well as other jobs. Ms. Benefield appeals that finding, claiming a litany of errors. The Court agrees that the finding must be reversed on at least a narrow ground: despite finding Ms. Benefield's headaches to be a severe impairment, the ALJ did not discuss any limitations from that condition in formulating her residual functional capacity or explain how the residual functional capacity accounted for that impairment. The Court thus remands this action to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

Diana Benefield alleges that she became disabled beginning in November 2014. She testified to experiencing chronic pain throughout her body, for which she had been diagnosed with fibromyalgia. She also had problems with her hands, which she said often caused her to drop things and forced her to leave her last job. She also testified that she had numbness in her

feet that caused difficulty walking. In March 2016, Ms. Benefield began reporting frequent headaches, and her doctor diagnosed her with daily chronic migraines.

An administrative law judge concluded that Ms. Benefield had severe impairments, including carpal tunnel syndrome and headaches, but he found that her fibromyalgia did not qualify as a medically determinable impairment under the agency's criteria. In assessing Ms. Benefield's residual functional capacity, the ALJ found that she could do a limited range of light work. Based on testimony from a vocational expert, the ALJ found that a person with Ms. Benefield's residual functional capacity could still perform some of her past jobs, and could also perform other jobs in the national economy. Thus, he found that Ms. Benefield did not qualify as disabled. After the Appeals Council denied review, Ms. Benefield filed this action, asking that the decision be reversed and remanded for further proceedings.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Benefield argues that the ALJ erred in multiple respects. She argues that the ALJ failed to adequately consider and address opinions by several doctors. She also argues that the ALJ erred in evaluating her diagnosis of fibromyalgia. She finally argues that the ALJ failed to account for a variety of evidence in formulating her RFC. One respect in which she alleges the ALJ committed that error is that, despite finding Ms. Benefield's headaches to be a severe impairment at step two, the ALJ's decision never discussed that condition or explained whether

or in what way the ALJ incorporated any resulting limitations into the RFC. The Court agrees that the ALJ erred in that respect, so the Court need not resolve the remaining arguments.

Ms. Benefield's argument on this point is straightforward. The ALJ concluded at step two that one of Ms. Benefield's severe impairments was "headaches." (R. 18). That finding was presumably based on treatment records from Dr. Vyas beginning in March 2016, when Ms. Benefield complained that she suffered headaches multiple times a week that caused pain in her head and neck and made her head feel like it was being squeezed. (R. 701). Dr. Vyas diagnosed her with "chronic daily migraine headaches," and Ms. Benefield continued to make similar complaints over the next year. (R. 706). But despite having found that condition to be a severe impairment, the ALJ's decision never discussed what limitations Ms. Benefield suffered as a result or how those limitations were reflected in the RFC. In fact, other than a few passing references to complaints of headaches, the ALJ's decision never discussed that condition or diagnosis at all. Thus, Ms. Benefield argues, the ALJ failed to draw a logical bridge between the evidence of her headaches and his findings as to her RFC.

In response, the Commissioner argues that the ALJ did not commit reversable error because Ms. Benefield has not identified any limitations that she suffers from her headaches beyond those contained in her RFC. This argument overlooks, however, that the ALJ himself found that Ms. Benefield's headaches constitute a severe impairment. By definition, a severe impairment is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1522(a). Thus, in finding that Ms. Benefield's headaches constitute a severe impairment, the ALJ found that they significantly limit her ability to do basic work activities.

The decision never drew a logical bridge between that finding and Ms. Benefield's RFC, though. The decision stated in a heading that Ms. Benefield's headaches were a severe impairment, but never explained why. The decision did not fill in that gap in its RFC discussion, either. In fact, that discussion only mentioned Ms. Benefield's complaints of headaches in passing a couple of times, without any reference to how the ALJ assessed that evidence or what limitations he found Ms. Benefield had as a result. The Court is thus left to guess at why the ALJ deemed headaches to be a severe impairment, what limitations the ALJ believed that impairment caused, and how the RFC accounts for them. Without that logical bridge, the Court cannot find that the ALJ's decision is supported by substantial evidence. *See Moore v. Colvin*, 743 F.3d 1118, 1127–28 (7th Cir. 2014) ("[T]he reviewing court should not have to speculate as to the basis for the RFC limitations."); *Young v. Barnhart*, 362 F.3d 995, 1002–03 (7th Cir. 2004) ("If the ALJ meant to capture all of [the claimant's] social and temperament problems within this RFC, he has failed to build the accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.").

The Commissioner also argues that Ms. Benefield offers only speculation about how her headaches would limit her ability to work. It is true that Ms. Benefield cited no evidence identifying concrete limitations she would experience due to her headaches. But she was diagnosed with chronic intractable migraines, and reported to her doctor that her migraines made it feel like her head was being squeezed. It is easy to see how those symptoms could affect a claimant's ability to concentrate, stay on task, or maintain adequate attendance. And again, the ALJ found that this was a severe impairment, meaning that it substantially limited Ms. Benefield's ability to do basic work functions. The problem is that he never explained how.

In addition, Ms. Benefield's headaches do not bear any apparent relation to the limitations in the RFC, such that the Court could find that the ALJ at least implicitly accounted for them. The limitations in the RFC address things like Ms. Benefield's ability to walk, crouch, use her hands, or be exposed to heights. None of those would accommodate the sorts of symptoms she reported from her headaches. Ms. Benefield also said that her headaches were caused by stress, during a time she was not working, so the RFC could not have accounted for her headaches by excluding work activities that might trigger them.

In sum, given the lack of explanation as to how the ALJ assessed Ms. Benefield's headaches and accounted for any resulting limitations in the RFC, the Court cannot find that the decision draws a logical bridge between the evidence and its findings. The Court must therefore remand, as if the ALJ were to adopt any additional limitations, that might affect Ms. Benefield's ability to perform her past work or other jobs. The parties are also free to address any of Ms. Benefield's arguments on remand as they see fit.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 11, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court